# In the United States Court of Federal Claims

No. 19-94C

(E-Filed: March 4, 2021)[1]

|  |  |  |
|---|---|---|
| PLAINTIFF NO. 1, et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | Motion to Dismiss; RCFC 12(b)(6); Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19; Anti-Deficiency Act |
| v. | ) ) ) | (ADA), 31 U.S.C. §§ 1341-42; Government Employees Fair |
| THE UNITED STATES, | ) ) | Treatment Act of 2019 (GEFTA); Pub. L. No. 116-1, 133 Stat. 3 (2019). |
| Defendant. | ) ) | |

Jules Bernstein, Washington, DC, for plaintiff.  Linda Lipsett, Daniel M. Rosenthal, and Alice Hwang, of counsel.

Erin K. Murdock-Park, Trial Attorney, with whom were Ethan P. Davis,[2] Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Ann C. Motto, Vijaya S. Surampudi, of counsel.

OPINION AND ORDER

CAMPBELL-SMITH, Judge.

Plaintiffs in this putative collective action allege that the government, through several agencies, violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19, by

---

[1] This opinion was issued under seal on December 11, 2020.  See ECF No. 122.  Pursuant to ¶ 4 of the ordering language, the parties were invited to inform the court as to whether any redactions were required before the court made this opinion publicly available.  No redactions were proposed by the parties.  See ECF No. 142 (notice).  Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

[2] Joseph H. Hunt was listed as Assistant Attorney General on defendant's motion to dismiss, see ECF No. 112, but was replaced with Ethan P. Davis on defendant's reply.

failing to timely pay their earned overtime and regular wages during the partial government shutdown and lapse of appropriations that began on December 22, 2018.  See ECF No. 109 at 23-24 (fourth amended complaint, hereinafter referred to as the complaint).  On June 4, 2020, defendant moved to dismiss the complaint for failure to state a claim on which relief may be granted, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), on the basis that the Anti-Deficiency Act (ADA), 31 U.S.C. §§ 1341-42, prohibited the government from paying employees.  See ECF No. 112.

In analyzing defendant's motion, the court has considered:  (1) plaintiffs' complaint, ECF No. 109; (2) defendant's motion to dismiss, ECF No. 112; (3) plaintiffs' response to defendant's motion, ECF No. 115; and (4) defendant's reply in support of its motion, ECF No. 116.  The motion is now fully briefed and ripe for ruling.  The court has considered all of the arguments presented by the parties, and addresses the issues that are pertinent to the court's ruling in this opinion.  For the following reasons, defendant's motion is **DENIED**.

I.   Background

On December 22, 2018, the federal government partially shut down due to a lack of appropriations.  See ECF No. 112 at 12.  The named plaintiffs and putative class members in this case were, at the time of the shutdown, "employed by federal agencies including but not limited to, the Federal Bureau of Investigations ('FBI'), the United States Secret Service ('USSS'), the Bureau of Alcohol, Tobacco, Firearms and Explosives ('ATF'), the Drug Enforcement Administration ('DEA') and the Federal Air Marshal Service ('FAM')."[3]  ECF No. 109 at 24.  Plaintiffs further allege that they were "essential and excepted employees of Defendant who are non-exempt under the [FLSA], and who worked for [d]efendant without being paid on their regular pay days, and at all, during the 2018-2019 Government shutdown, in violation of [the] FLSA."  Id.

Plaintiffs assert that, at the time of the shutdown, defendant was "on express notice of this [c]ourt's decision in Martin v. United States, 117 Fed. Cl. 578 (2017), . . . in which this [c]ourt held that [d]efendant's failure to pay approximately 24,000 of its excepted employees 'on time,' in connection with a prior governmental shutdown in 2013 violated the FLSA."  Id. at 25.  As a result of the holding in Martin, plaintiffs allege that defendant "had express notice that its violations alleged herein were patently

---

[3]   Defendant argues, in a footnote, that claims made by FLSA-exempt employees and employees who have asserted the same claims in another court should be dismissed from this action.  See ECF No. 112 at 16-17 n.3.  The court does not evaluate these assertions in this opinion because defendant neither identifies any such plaintiffs in this case, nor sufficiently briefs the issues to the court.

unlawful, and it engaged in these violations nonetheless, . . . in reckless disregard" of applicable law.  Id.

Plaintiffs seek, for themselves and those similarly-situated, declaratory judgment, and an award of "liquidated damages under [the] FLSA in an amount equal to the minimum wages, or straight time wages, whichever is greater, and overtime compensation they did not receive, but were entitled [to] . . . on their regularly scheduled pay days."  Id. at 28-29.  Plaintiffs also see an award of reasonable attorneys' fees and costs.  See id. at 29.

II.     Legal Standards

When considering a motion to dismiss brought under RCFC 12(b)(6), the court "must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff."  Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).  It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy."  Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

III.    Analysis

A.      Relevant Statutes

This case fundamentally concerns the intersection of two statutes, the ADA and the FLSA.  The ADA states that "an officer or employee" of the federal government "may not . . . make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation."  31 U.S.C. § 1341(a)(1)(A).  In addition, the ADA dictates that "[a]n officer or employee of the United States Government or of the District of Columbia government may not accept voluntary services for either government or employ personal services exceeding that authorized by law except for emergencies involving the safety of human life or the protection of property."  31 U.S.C. § 1342.  In 2019, Congress amended the ADA, adding, in relevant part, the following:

> [E]ach excepted employee who is required to perform work during a covered lapse in appropriations[4] shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates, and subject to the enactment of appropriations Acts ending the lapse.

31 U.S.C. § 1341(c)(2) (footnote added). The amendment is commonly referred to as the Government Employees Fair Treatment Act of 2019 (GEFTA), Pub. L. No. 116-1, 133 Stat. 3 (2019). The knowing or willful violation of the ADA is punishable by a fine of "not more than $5,000" or imprisonment "for not more than 2 years, or both." 31 U.S.C. § 1350. And federal employees who violate the ADA "shall be subject to appropriate administrative discipline including, when circumstances warrant, suspension from duty without pay or removal from office." 31 U.S.C. § 1349(a).

Defendant separately has obligations to its employees pursuant to the FLSA, which governs minimum wage and overtime wage compensation for certain employees.[5] See 29 U.S.C. § 213 (identifying categories of exempt employees). The FLSA requires that the government "pay to each of [its] employees" a minimum wage. 29 U.S.C. § 206(a). Pursuant to the FLSA, the government also must compensate employees for hours worked in excess of a forty-hour workweek "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). Although the text of the statute does not specify the date on which wages must be paid, courts have held that employers are required to pay these wages on the employee's next regularly scheduled payday. See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945); Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993). If an employer violates the FLSA's pay provisions, the employer is "liable to the . . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). The employer may also be liable "in an additional equal amount as liquidated damages," id., unless "the employer shows to the satisfaction of the court that the act or omission . . . was in good faith, and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]," 29 U.S.C. § 260.

---

[4]   The statute defines "covered lapse in appropriations" to mean "any lapse in appropriations that begins on or after December 22, 2018." 31 U.S.C. § 1341(c)(1)(A).

[5]   The FLSA initially applied only to the private sector when enacted in 1938, but was amended to cover public employees in 1974. See Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, 88 Stat. 55 (1974).

4

B.  The Court's Reasoning in Martin Applies

In its motion to dismiss, defendant first argues that plaintiffs' complaint should be dismissed for failure to state a claim because the agencies for which appropriations lapsed on December 22, 2018, were prohibited by the ADA from paying their employees—even excepted employees who were required to work. See ECF No. 112 at 14-15. This mandate, in defendant's view, means that defendant cannot be held liable for violating its obligations under the FLSA. See id. Defendant argues:

> When Congress criminalized payments during an appropriations lapse, it plainly precluded payments on the schedule plaintiffs assert is required by the FLSA. Federal officials who comply with that criminal prohibition do not violate the FLSA, and Congress did not create a scheme under which compliance with the [ADA] would result in additional compensation as damages to federal employees.

Id. at 14.

The court has previously ruled on the intersection of the ADA and the FLSA in the context of a lapse in appropriations. See Martin v. United States, 130 Fed. Cl. 578 (2017). In Martin, plaintiffs were "current or former government employees who allege[d] that they were not timely compensated for work performed during the shutdown, in violation of the [FLSA]." Id. at 580 (citing 29 U.S.C. § 201 et seq.). The plaintiffs in Martin alleged the right to liquidated damages with regard to both the government's failure to timely pay minimum wages and its failure to pay overtime wages. See id. In its motion for summary judgment, the government argued that "it should avoid liability under the FLSA for its failure to [pay plaintiffs on their regularly scheduled pay days during the shutdown] because it was barred from making such payments pursuant to the ADA." See id. at 582. The government summarized its argument in Martin as follows:

> The FLSA and the Anti-Deficiency Act appear to impose two conflicting obligations upon Federal agencies: the FLSA mandates that the agencies "shall pay to each of [its] employees" a minimum wage, 29 U.S.C. § 206(a) (emphasis added), which has been interpreted by the courts to include a requirement that the minimum wage be paid on the employees' next regularly scheduled pay day, see Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707 n.20 [65 S. Ct. 895, 89 L. Ed. 1296] (1945); Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993), and the [ADA] mandates that "[a]n officer or employee of the United States Government . . . may not . . . make or authorize an expenditure . . . exceeding an amount available in an appropriation or fund for the expenditure . . . ." 31 U.S.C. § 1341(A)(1)(A) (emphasis added). Thus, when Federal agencies are faced with a lapse in appropriations and

> cannot pay excepted employees on their next regularly scheduled payday, the question arises of which statutory mandate controls.

Id. at 582-83 (quoting defendant's motion for summary judgment) (alterations in original).

After reviewing applicable precedent and persuasive authority, the court concluded that "the issue is more complex than simply a choice between whether the FLSA or the ADA controls." Id. at 583. In the court's view:

> the appropriate way to reconcile the [ADA and the FLSA] is not to cancel defendant's obligation to pay its employees in accordance with the manner in which the FLSA is commonly applied. Rather, the court would require that defendant demonstrate a good faith belief, based on reasonable grounds, that its actions were appropriate. As such, the court will proceed to analyze this case under the construct of the FLSA, and evaluate the existence and operation of the ADA as part of determining whether defendant met the statutory requirements to avoid liability for liquidated damages.

Id. at 584.

The court noted that plaintiffs' claims survived a motion to dismiss because they had "alleged that defendant had failed to pay wages" on plaintiffs' "next regularly scheduled payday." Id. at 584. On summary judgment, the court concluded that plaintiffs had proven this claim. See id. The court then concluded that the evidence supported an award of liquidated damages because the government failed to satisfy the court that it acted in good faith and on reasonable grounds when it failed to make the payments required under the FLSA.[6] See id. at 585-86.

Both parties acknowledge that the plaintiffs in Martin were "situated similarly to plaintiffs in this case." ECF No. 112 at 15 (defendant's motion to dismiss); see also ECF No. 115 at 6 (stating that "[t]he [g]overnment admits that the [p]laintiffs in this case are similarly situated to those in Martin").

In its motion to dismiss, defendant does not dispute plaintiffs' allegations that they were required to work during the shutdown, or that the plaintiffs were not paid during

---

[6] In Martin, the defendant also argued that it should avoid liability for liquidated damages with regard to overtime wages due to its inability to calculate the correct amounts due. See Martin v. United States, 130 Fed. Cl. 578, 586-87 (2017). This argument was based on a bulletin from the Department of Labor, and involves an issue that has not been raised in the present case. The absence of this argument, however, has no bearing on the application of the court's reasoning in Martin with regard to the structure of the proper analysis in this case.

6

that time due to the lapse in appropriations.  See ECF No. 112.  Defendant characterizes the issue now before the court as "whether plaintiffs have stated a claim for liquidated damages under the [FLSA] in light of the provisions in of the [ADA]."  Id. at 8.  In arguing its position, defendant reiterates the arguments advanced in Martin, but does not present any meaningful distinction between the posture of the Martin plaintiffs and the plaintiffs here.  Instead, it acknowledges that "[t]his Court in Martin v. United States concluded that plaintiffs situated similarly to plaintiffs in this case could recover liquidated damages under the FLSA," but states that it "respectfully disagree[s] with that holding."  Id. at 15.

Notwithstanding defendant's disagreement, the court continues to believe that the framework it set out in Martin is appropriate and applies here.[7]  As it did in Martin, "the court will proceed to analyze this case under the construct of the FLSA, and evaluate the existence and operation of the ADA as part of determining whether defendant met the statutory requirements to avoid liability for liquidated damages."[8]  Martin, 130 Fed. Cl. at 584.  The court will, of course, consider the GEFTA amendment to the ADA as part of its analysis.

---

[7]    Defendant also argues that its obligations under the FLSA are limited by the ADA because "a congressional payment instruction to an agency must be read in light of the [ADA]." ECF No. 112 at 18.  In support of this argument, defendant cites to Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States, 48 F.3d 1166, 1171 (Fed. Cir. 1995).  See id.  In Highland-Falls, plaintiffs challenged the Department of Education's (DOE) method for allocating funds under the Impact Aid Act.  Highland-Falls, 48 F.3d at 1171.  The United States Court of Appeals for the Federal Circuit found, however, that the DOE's "approach was consistent with statutory requirements."  Id.  The case did not address FLSA claims, and found that the DOE's approach "harmonized the requirements of the Impact Aid Act and the [ADA]." See id.  In the court's view, the Federal Circuit's decision in Highland-Falls does not alter the analysis in this case.

[8]    The parties both claim that the Supreme Court of the United States' decision in Maine Community Health, 140 S. Ct. 1308, supports their position in this case.  See ECF No. 112 at 21-23; ECF No. 115 at 9, 17-18.  Maine Community Health does not address the FLSA, and only includes a limited discussion of the ADA.  See Maine Cmty. Health, 140 S. Ct. at 1321-22. Accordingly, the decision does not dictate the outcome here.  To the extent that the case informs the present discussion, however, it tends to support plaintiffs.  In the opinion, the Supreme Court held that "the [ADA] confirms that Congress can create obligations without contemporaneous funding sources," and concludes that "the plain terms of the [statute at issue] created an obligation neither contingent on nor limited by the availability of appropriations or other funds." Id. at 1322, 1323. Applied here, this conclusion suggests that the defendant can incur an obligation to pay plaintiffs pursuant to the normal operation of the FLSA even when funding is not available.

C.	Waiver of Sovereign Immunity

Before analyzing the sufficiency of plaintiffs' allegations, the court must address defendant's contention that plaintiffs' claims are barred by the doctrine of sovereign immunity. In its motion to dismiss, defendant correctly notes that "'[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied.'" ECF No. 112 at 21 (quoting Lane v. Pena, 518 U.S. 187, 192 (1996)). And that waiver "'will be strictly construed, in terms of its scope, in favor of the sovereign.'" Id. (quoting Lane, 518 U.S. at 192). Defendant concedes that the FLSA includes a waiver of sovereign immunity, but argues that the claims made by plaintiffs in this case fall outside the scope of that waiver. See id.; see also King v. United States, 112 Fed. Cl. 396, 399 (2013) (stating that "there is no question that sovereign immunity has been waived under the FLSA").

Defendant argues that the FLSA "does not require that employees be paid on their regularly scheduled pay date or make damages available when compensation is not received on a pay date." ECF No. 112 at 23. As a result, defendant contends, the scope of the FLSA's waiver of sovereign immunity does not extend to the category of claims alleging a FLSA violation because wages were not paid as scheduled, such as plaintiffs' claims in this case. See id. at 23-24. According to defendant, the GEFTA confirms its long-standing belief that the government's payment obligations under the FLSA are abrogated by a lack of appropriations:

> The [GEFTA] provides that "each excepted employee who is required to perform work during a . . . lapse in appropriations shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates." Pub. L. No. 116-1, 133 Stat. 3. Congress has thus spoken directly to the question of when compensation should be paid. There can be no basis for inferring that compensation made in accordance with that explicit directive subjects the United States to liquidated damages.

Id. at 24.

Defendant also asserts, without citation to any authority, as follows:

> Given that the [ADA] not only prohibits federal agencies from paying excepted employees on their regularly scheduled paydays during a lapse in appropriations, and that it specifically addresses when and at what rate wages are to be paid following a lapse in appropriations, the government's waiver of sovereign immunity under the FLSA must be strictly construed against liability for the delayed (but always forthcoming) payment of wages because of a lapse in appropriations.

8

ECF No. 116 at 15.

The court disagrees.  The claims brought by plaintiffs in this case are "straightforward" minimum wage and overtime claims under the FLSA.  ECF No. 115 at 12; see also ECF No. 109 at 27.  Because the FLSA does not specify when such claims arise, courts have interpreted the statute to include a requirement that employers make appropriate wage payments on the employee's next regularly scheduled payday.  See Brooklyn Sav. Bank, 324 U.S. at 707; Biggs, 1 F.3d at 1540.  Contrary to defendant's suggestion, the court is unpersuaded that this judicially-imposed timing requirement transforms ordinary FLSA claims into something analytically distinct, and beyond the scope of the statute's waiver of sovereign immunity.

Accordingly, the court finds that defendant has waived sovereign immunity as to plaintiffs' claims, as it has with all FLSA claims, and the court will review the sufficiency of plaintiffs' allegations as it would in any other FLSA case.

D.   Plaintiffs State a Claim for FLSA Violations

As noted above, the FLSA requires that the government "pay to each of [its] employees" a minimum wage.  29 U.S.C. § 206(a).  Pursuant to the FLSA, the government also must compensate employees for hours worked in excess of a forty-hour workweek "at a rate not less than one and one-half times the regular rate at which [they are] employed."  29 U.S.C. § 207(a)(1).  And although the text of the statute does not specify the date on which wages must be paid, courts have held that employers are required to pay these wages on the employee's next regularly scheduled payday.  See Brooklyn Sav. Bank, 324 U.S. at 707; Biggs, 1 F.3d at 1540.

In their complaint, plaintiffs allege that during the lapse in appropriations, they were "essential and excepted employees of Defendant who are non-exempt under the [FLSA], and who worked for Defendant without being paid on their regular pay days, and at all, during the 2018-2019 Government shutdown, in violation of the FLSA."  ECF No. 109 at 24.

Defendant does not contest any of these allegations, and in fact, concedes that "plaintiffs [were] employees of agencies affected by the lapse in appropriations," and that "plaintiffs were paid for the work performed during the lapse at the earliest possible date after the lapse in appropriations ended."  ECF No. 112 at 13, 14.  Defendant also admits that "[p]laintiffs are federal employees who performed excepted work during the most recent lapse in appropriations."  Id. at 16.  In short, defendant does not claim that plaintiffs are not entitled to payment under the FLSA, but instead argues that it "fully complied with its statutory obligations to plaintiffs."  Id. at 17.

9

The court finds that, presuming the facts as alleged in the complaint and drawing all reasonable inferences in their favor, plaintiffs have stated a claim for relief under the FLSA.  See Cary, 552 F.3d at 1376 (citing Gould, 935 F.2d at 1274).

E.   Liquidated Damages

Defendant insists that its failure to pay plaintiffs was a decision made in good faith, in light of the ADA.  See ECF No. 116 at 17.  It further urges the court to find that its good faith is so clear that the recovery of liquidated damages should be barred at this stage in the litigation.  See id. at 17-20.  But as the court held in Martin:

> [I]t would be inappropriate to determine, on motion to dismiss, whether the government had reasonable grounds and good faith.  It may well be that the government can establish these defenses, but its opportunity to do so will come later on summary judgment or at trial.  Moreover, even if the court were to decide that a liquidated damages award is warranted, additional factual determinations remain to be made as to which employees, if any, are entitled to recover, and damages, if any, to which those employees would be entitled.

Martin v. United States, 117 Fed. Cl. 611, 627 (2014).  Accordingly, the court declines to rule at this time on the issue of whether defendant can establish a good faith defense against liability for liquidated damages in this case.[9]

IV.   Conclusion

Accordingly, for the foregoing reasons:

(1)   Defendant's motion to dismiss, ECF No. 112, is **DENIED**;

(2)   On or before **February 12, 2021**, defendant is directed to **FILE** an **answer** or otherwise respond to plaintiffs' complaint; and

---

[9]   The court acknowledges that the parties have a significant disagreement with regard to interpreting and applying the regulation that governs the calculation of liquidated damages under the FLSA.  See ECF No. 112 at 26-30 (arguing that under the applicable regulations plaintiffs are not entitled to liquidated damages for straight time pay); ECF No. 115 at 22-27 (arguing, in response, that plaintiffs "are entitled to liquidated damages in an amount equal to their straight time [ ] pay for all non-overtime hours worked").  Because the court does not reach the issue of whether plaintiffs are entitled to liquidated damages at this stage in the litigation, it is premature to decide how such damages, if they are ultimately awarded, should be calculated.  As such, the court reserves its ruling on this question and the parties may re-urge their arguments at the appropriate time.

(3) On or before **February 12, 2021**, the parties are directed to **CONFER** and **FILE** a **joint status report** informing the court as to their positions on the consolidation of this case with any other matters before the court; and

(4) On or before **February 12, 2021**, the parties are directed to **CONFER** and **FILE** a **notice** informing the court as to whether any redactions are required before the court makes this order publicly available, and if so, attaching an agreed-upon proposed redacted version of this opinion and order.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith  
PATRICIA E. CAMPBELL-SMITH  
Judge